**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF TEXAS**
**EL PASO DIVISION**

| | | |
|---|---|---|
| **JILL FINKELSTEIN,** *Plaintiff,* | § | |
| **v.** | § | **No. 3:25-CV-00133-MAT** |
| **FRANK BISIGNANO, COMMISSIONER OF THE SOCIAL SECURITY ADMINISTRATION,** *Defendant.* | § | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Jill Finkelstein ("Plaintiff") appeals from a decision of the Commissioner of the Social Security Administration ("Defendant") denying her claim for disability insurance benefits ("DIB") under Title II of the Social Security Act. Upon consent of both parties, United States Senior District Judge David Briones referred this case to the undersigned for disposition. ECF No. 18. For the following reasons, the Court **ORDERS** that the Commissioner's decision be **REVERSED** and the case **REMANDED** for further proceedings.

## I. BACKGROUND & PROCEDURAL HISTORY

Plaintiff was seventy-years-old at the time the Administrative Law Judge ("ALJ") Michael Leppala issued his decision on May 30, 2024. Tr. of Admin. R. [hereinafter "Tr."] at 65, 790-805, ECF Nos. 8-2, 8-8. Plaintiff completed "4 or more years of college" and had past relevant work as a director of special education. *Id.* at 213, 804. She suffers from the following severe impairments: degenerative disc disease of the cervical and lumbar spines, bilateral carpal tunnel syndrome, and diabetes mellitus with mononeuropathy of the bilateral feet. *Id.* at 795-96.[1] On March 31, 2016,

[1] "Mononeuropathy is damage to a single nerve that causes issues like pain, abnormal sensations (paresthesia) and/or movement issues. Mononeuropathy is a type of peripheral neuropathy – it happens to nerves in your body that are outside of your brain and spinal cord." *Mononeuropathy*, CLEVELAND CLINIC, https://my.clevelandclinic.org /health/ diseases/16014-mononeuropathy (last visited Sept. 28, 2026).

Plaintiff filed a Title II application for disability insurance benefits, alleging disability beginning on June 28, 2015. *Id.* at 11. The claim was denied on September 17, 2016, then Plaintiff requested a hearing before an ALJ. *Id.* ALJ Brian Crawley held a telephonic hearing on March 4, 2019, and later issued a decision denying Plaintiff's claims on May 6, 2019. *Id.* at 8-19. Plaintiff requested review of the ALJ's decision, which was denied by the Appeals Council on July 1, 2020. *Id.* at 1. The ALJ's decision became the final decision of the Commissioner at that time.[2] Plaintiff then sought judicial review in the United States District Court for the Eastern District of New York, which remanded the case to the commissioner on September 29, 2022, and requested the ALJ "develop the record by obtaining clarification of any medical records that are illegible." *Id.* at 858.[3]

On October 12, 2023, ALJ Michael Leppala held a telephonic hearing where Plaintiff was represented by counsel, Sharmine Persaud. *Id.* at 815-26. On May 30, 2024, Plaintiff's application was denied. *Id.* at 790-805. Plaintiff requested review with the Appeals Council, which was denied on March 3, 2025. *Id.* at 772. The ALJ's decision became the final decision of the Commissioner at that time, and the subject of this appeal.

On April 18, 2025, Plaintiff brought this action seeking judicial review of the Commissioner's denial under 42 U.S.C. § 405(g). She filed her opening brief on October 31, 2025, requesting that the Court vacate the Commissioner's decision and remand her claims for further administrative proceedings. Pl.'s Br. at 19, ECF No. 12. On January 8, 2026, the Commissioner filed a response to Plaintiff's brief, requesting that the Court affirm the Commissioner's decision.

---

[2] *See Masterson v. Barnhart*, 309 F.3d 267, 271 (5th Cir. 2002) ("The ALJ's decision thus became the Commissioner's final and official decision when the Appeals Council denied [the claimant's] request for review on the merits.").

[3] Plaintiff's Appeal in E.D.N.Y. is *Jill Finkelstein v. Comm'r of Soc. Sec.*, No. 20-CV-4047 (JMA) (E.D. N.Y. Sep. 29, 2022).

Br. in Supp. of Comm'r's Decision 8 [hereinafter "Def.'s Resp."], ECF No. 17. Plaintiff did not file a reply brief.

## II. DISCUSSION

### A. Standard of Review

Judicial review, under 42 U.S.C. § 405(g), of the Commissioner's decision denying social security benefits is "highly deferential." *Garcia v. Berryhill*, 880 F.3d 700, 704 (5th Cir. 2018). Review is limited to a determination of whether (1) the Commissioner's final decision is supported by substantial evidence on the record and (2) the Commissioner applied the proper legal standards. *See* 42 U.S.C. § 405(g); *Copeland v. Colvin*, 771 F.3d 920, 923 (5th Cir. 2014).

"Substantial evidence is more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Sun v. Colvin*, 793 F.3d 502, 508 (5th Cir. 2015). "[W]hatever the meaning of 'substantial' in other contexts, the threshold for such evidentiary sufficiency is not high." *Biestek v. Berryhill*, 587 U.S. 97, 103 (2019). In applying the "substantial evidence" standard, "the court scrutinizes the record to determine whether such evidence is present," *Sun*, 793 F.3d at 508, but it may not "try the issues *de novo*" or "reweigh the evidence." *Salmond v. Berryhill*, 892 F.3d 812, 817 (5th Cir. 2018). "[N]or, in the event of evidentiary conflict or uncertainty," may the court substitute its judgment for the Commissioner's, "even if [it] believe[s] the evidence weighs against the Commissioner's decision." *Garcia v. Berryhill*, 880 F.3d 700, 704 (5th Cir. 2018). "Conflicts of evidence are for the Commissioner, not the courts, to resolve." *Sun*, 793 F.3d at 508. "A finding of no substantial evidence is appropriate only if no credible evidentiary choices or medical findings support the decision." *Whitehead v. Colvin*, 820 F.3d 776, 779 (5th Cir. 2016).

Generally, "[w]here . . . the Secretary has relied on erroneous legal standards in assessing the evidence, he must reconsider that denial." *Leidler v. Sullivan*, 885 F.2d 291, 294 (5th Cir.

1989). However, even if the ALJ commits legal error, "remand is warranted only if the . . . error was harmful." *Miller v. Kijakazi*, No. 22-60541, 2023 WL 234773, at *3 (5th Cir. Jan. 18, 2023) (per curiam) (citing *Shinseki v. Sanders*, 556 U.S. 396, 407–08 (2009)); *see also Mays v. Bowen*, 837 F.2d 1362, 1364 (5th Cir. 1988) ("Procedural perfection in administrative proceedings is not required. This court will not vacate a judgment unless the substantial rights of a party have been affected."). "Harmless error exists when it is inconceivable that a different administrative conclusion would have been reached even if the ALJ did not err." *Keel v. Saul*, 986 F.3d 551, 556 (5th Cir. 2021). It also is plaintiff's burden to show prejudice or harm from the error. *Jones v. Astrue*, 691 F.3d 730, 734–35 (5th Cir. 2012).

**B. The ALJ's Evaluation Process**

Eligibility for disability insurance benefits on the basis of disability requires that the claimant be "disabled" within the meaning of the Social Security Act. 42 U.S.C. §§ 423(a)(1)(E), 1382(a). Under the Social Security Act, disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment … which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); *see* 42 U.S.C. § 416(i). "A claimant is disabled only if her physical or mental impairment or impairments are so severe that she is unable to do her previous work, and cannot, considering her age, education, and work experience, participate in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work is available in the immediate area where she lives, whether a specific job vacancy actually exists, or whether she would be hired if she applied for such work." *Lopez v. Bisignano*, SA-25-CV-232-OLG (HJB), 2025 WL 4033863, at *3 (W.D. Tex. Dec. 19, 2025) (citing 42 U.S.C. § 423(d)(2)(A)).

In evaluating a disability claim, the ALJ follows a five-step sequential process to determine whether: (1) the claimant is presently engaged in substantial gainful employment; (2) the claimant has a severe medically determinable physical or mental impairment; (3) the claimant's impairment meets or medically equals an impairment listed in the appendix to the regulations; (4) the impairment prevents the claimant from doing past relevant work; and (5) the impairment prevents the claimant from performing other substantial gainful activity. 20 C.F.R. § 404.1520(a)(4); *Salmond*, 892 F.3d at 817.

Between steps three and four, the ALJ determines the claimant's "residual functional capacity" ("RFC"). 20 C.F.R. § 404.1520(e). The RFC "is the most [the claimant] can still do despite [their] limitations." *Id.* § 404.1545(a)(1). The ALJ determines the RFC by examining "all of the relevant medical and other evidence." *Id.* § 404.1545(a)(3). When using medical opinions as evidence, the ALJ must assess the persuasiveness of such evidence in her opinion. *Id.* § 404.1520c(a). Persuasiveness is based on several factors that the ALJ must consider, but the ALJ is only required to articulate "supportability" and "consistency" in her decision. *Id.* § 404.1520c(b)(2). The ALJ then uses the claimant's RFC in making determinations at steps four and five. *Id.* § 404.1520(e).

"The burden of proof is on the claimant at the first four steps." *Kneeland v. Berryhill*, 850 F.3d 749, 753 (5th Cir. 2017). If the claimant meets this burden, at step five the burden shifts to the Commissioner "to show that there is other substantial gainful employment available that the claimant is capable of performing." *Fraga v. Bowen*, 810 F.2d 1296, 1301–02 (5th Cir. 1987). If the Commissioner satisfies this burden, "the burden then shifts back to the claimant to prove that he is unable to perform the alternate work." *Id.* at 1302. A determination at any step that the

claimant is or is not disabled "ends the inquiry." *Keel v. Saul*, 986 F.3d 551, 555 (5th Cir. 2021); *see* 20 C.F.R. §404.1520(a)(4).

**C. <u>The ALJ's Findings</u>**

Here, ALJ Leppala evaluated Plaintiff's claims pursuant the above-mentioned five-step sequential evaluation process. At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity from June 28, 2015 through her date last insured, December 31, 2019. Tr. at 795. At step two, the ALJ found that Plaintiff had the following severe impairments: degenerative disc disease of the cervical and lumbar spines, bilateral carpal tunnel syndrome, and diabetes mellitus with mononeuropathy of the bilateral feet. *Id.* at 795-96. At step three, the ALJ concluded that through the date last insured, Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. pt. 404, Subpart P, Appendix 1. *Id.* at 799.

Next, before proceeding to step four, the ALJ determined Plaintiff's Residual Functional Capacity ("RFC"). The ALJ found that after consideration of the entire record, through the date last insured

> the Claimant had the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) in that she could lift and/or carry 20 pounds occasionally and lift and/or carry 10 pounds frequently. She could stand and/or walk for about 6 hours in an 8 hour workday and sit for about 6 hours in an 8-hour workday, all with normal breaks. The Claimant was further limited to frequently reaching overhead, occasionally handling, fingering, and feeling, and frequently pushing and pulling with her upper extremities. The Claimant was limited to frequent operation of foot controls with her right lower extremity and never operation of foot controls with her left lower extremity. She was limited to frequently climbing ramps or stairs, never climbing ladders, ropes, or scaffolds, occasionally balancing, stooping, kneeling, crouching, and never crawling. The Claimant must have avoided all exposure to unprotected heights, was limited to occasional exposure to moving mechanical parts, humidity, wetness, and vibration, frequent exposure to operation of

> a motor vehicle, and environments with no more than loud noise. The Claimant is unable to walk at a reasonable pace on rough or uneven surfaces.

Tr. at 799-800.

At step four, the ALJ found, by comparing Plaintiff's RFC with the physical and mental demands of her past relevant work as a director of special education (skilled work performed at the sedentary level), that Plaintiff is able to perform her past relevant work as it is generally performed and as it was actually performed. *Id.* at 805. Therefore, the ALJ concluded that Plaintiff was not disabled under the Social Security Act at any time from June 28, 2015 (her alleged disability onset date), through December 31, 2019 (the date last insured). *Id.*

**D. <u>Analysis</u>**

Plaintiff argues in her brief that remand is required for two reasons: (i) the ALJ failed to comply with a remand order directing the Commissioner develop the record and (ii) because the ALJ erred as a matter of law by failing to incorporate limitations from medical opinions the ALJ found to be persuasive. Tr. at 7.

**1. The ALJ Failed to Properly Develop the Record**

The first issue on appeal concerns whether the ALJ complied with the Appeals Council's remand instructions and the Eastern District of New York's remand order. On September 29, 2022, United States District Judge Joan M. Azrack remanded Plaintiff's appeal for further proceedings according to the fourth sentence of section 205(g) of the Social Security Act. *See Jill Finkelstein v. Comm'r of Soc. Sec.*, No. 20-CV-4047 (JMA) (E.D.N.Y. Sep. 29, 2022). Judge Azrack's order instructed that "on remand, the ALJ is requested to develop the record by obtaining clarification of any relevant medical records that are illegible." Tr. at 858. On March 17, 2023, the Appeals Council vacated the Commissioner's final decision and remanded Plaintiff's "case to an Administrative Law Judge for further proceedings consistent with the order of the court." *Id.* at

863. The Appeals Council ordered that "the Administrative Law Judge will offer the claimant the opportunity for a hearing, take any further action needed to complete the administrative record and issue a new decision." *Id.*

Plaintiff argues that "although the Court ordered further development of the record, the ALJ did not comply, resulting in an RFC determination that is not supported by substantial evidence." Pl.'s Br. at 9. The Court agrees.

Upon remand, "an ALJ shall take any action that is ordered by the Appeals Council and may make any determination that is not inconsistent with the remand order." *Valek v. Shalala*, 56 F.3d 1385, 1995 WL 337760, at *2 (5th Cir. 1995) (citing *Houston v. Sullivan*, 895 F.2d 1012, 1015 (5th Cir. 1989)). However, "the Fifth Circuit has expressly held that failure to comply with an Appeals Council order does not, by itself, constitute reversible error." *Preciado v. Saul*, No. 4:19-Cv-02756, 2020 WL 6940881, at *3 (S.D. Tex. Nov. 25, 2020) (citing *Henderson v. Colvin*, 520 F. App'x 268, 273 (5th Cir. 2013)). "Instead, the clear rule is that remand is warranted only where the ALJ's decision fails to apply the proper legal standard or the decision is not supported by substantial evidence." *Henderson*, 520 F. App'x at 273.

ALJ's have a duty to "develop the facts fully and fairly" in a disability benefits claim. *Ripley v. Chater*, 67 F.3d 552, 557 (5th Cir. 1995). "Where the record is ambiguous or incomplete, the ALJ should inquire further by requesting a medical source statement, subpoenaing the claimant's physician, or holding a second hearing." *Robinson v. Kijakazi*, Civil Action No. 21-885, 2022 WL 2865857, at *10 (E.D. La. June 21, 2022) (citing *Tonapetyan v. Halter*, 242 F.3d 1144, 1150 (9th Cir. 2001)); *see also Ripley*, 67 F.3d at 557. Social Security Ruling ("SSR") 16-3p instructs that a variety of means are available for an ALJ to develop an insufficient record, including obtaining additional evidence from the individual about the nature of his symptoms and

the effect on functioning, requesting additional information from the individual about testing or treatment, requesting clarifying information from the medical sources, or sending the individual to a consultative examination. SSR 16-3p, 2017 WL 5180304, at *3 (S.S.A. Oct. 25, 2017). Of note, none of these options are required. *See id.* Further, the claimant is only entitled to reversal if the ALJ's failure to satisfy the duty to develop the record results in prejudice to the claimant. *Ripley*, 67 F.3d at 557.

"[T]he Fifth Circuit, in *Henderson v. Colvin*, addressed a similar argument [as Plaintiff's] with regard to an ALJ's decision following a remand order from the Appeals Council. There, the Fifth Circuit noted the absence of mandatory authority supporting 'the proposition that failure to comply with an Appeals Council order constitutes reversible error.'" *Tillman v. Colvin*, No. 18-1011-SDD-RLB, 2019 WL 1217312, at *8 (M.D. La. Feb. 15, 2019) (citations omitted). "Despite its reservations, in 'an abundance of thoroughness,' the *Henderson* court went on to address the issue, finding that the 'ALJ addressed each category that he was directed to evaluate on remand.'" *Id.* (citing *Henderson*, 520 F. App'x at 273).

A different result is appropriate here. Even assuming it is proper to review the issue of whether the ALJ complied with Appeals Council's remand order, the Court finds that the ALJ did not adequately "complete the administrative record." Tr. at 863. The Appeals Council directed the ALJ, on remand, to "offer the claimant the opportunity for a hearing, take any further action needed *to complete the administrative record* and issue a new decision." *Id.* (emphasis added). Moreover, Judge Azrack's remand order instructed that "on remand, the ALJ is requested to develop the record by obtaining clarification of any relevant medical records that are illegible." *Id.* at 858.

This request was made because part of the record evidence, specifically the treatment notes of Plaintiff's neurologist, Dr. Brahmananda Rao Yadlapalli, were illegible. Dr. Yadlapalli treated

Plaintiff's neuropathy from March 2015 to March 2019, then apparently moved to Florida. *Id.* at 323, 335, 340, 754, 1038. The notes Dr. Yadlapalli left behind on her case are mostly indiscernible. The core issue in this case revolves around these illegible treatment notes from Plaintiff's neurologist.

On remand, ALJ Leppala held a telephone hearing on October 12, 2023, where Plaintiff was represented by counsel, Ms. Persaud. *Id.* at 815-26. At that hearing, ALJ Leppala explained that his office "tried to track [Dr. Yadlapalli] down to Florida . . . [And asked,] Ms. Persaud, do you have a sense of where Dr. [Yadlapalli] is?" Tr. at 818. To which Ms. Persaud responded "No. No we don't. We've tried to the same type of search that you did. We came up with a Yazapouli also in Florida, but I don't know that that person is a doctor." *Id.* ALJ Leppala continued that "[b]ased on the District Court's remand, in light of the failure to fully develop the record, and given the fact that nobody seems to be able to track down Dr. [Yadlapalli] . . . . [B]ut my intention is to go ahead and line up at least one medical expert and maybe two to testify. We can do those two ways, Ms. Persaud. I can either do it via interrogatories, but my way is usually to just go with testimony. . . . [T]hat way we can both question the medical experts if we want to, and I – even if I do go with ME [("Medical Expert")] interrogatories, it – once we proffer them, my reflect action is if you request a supplemental hearing, unless it's going to be a fully favorable, is I just kind of always reschedule a supplemental hearing anyway . . . . So, Ms. Persaud, I'm willing to talk our way through this, but what do you think?" *Id.* at 818-19. Ms. Persaud then asked if he would "send interrogatories to the current treating [physician]?" *Id.* at 819-20. ALJ Leppala then explained that he would "do ME interrogatories[.]" *Id.* at 820. Then after asking which impairments Ms. Persaud claimed were severe, Ms. Persaud answered "a combination of the diabetes and the herniated discs in the spine." *Id.* When asked if her visual impairment was severe, Ms. Persaud responded "the

visual wouldn't meet the listing, but do I think it's severe? It's severe enough to impact –." *Id.* ALJ Leppala explained that impairments did not need to be severe to be considered and explained that he hoped "that the medical experts can actually read Dr. [Yadlapalli's] notes. . . . [And,] [w]e wouldn't send them out to the treating doctors. The would just be randomly assigned to doctors at my office." *Id.* at 821. When asked whether she wanted ALJ Leppala to send interrogatories or schedule another hearing, Ms. Persaud responded "Yes. Yes. Do interrogatories." *Id.* at 822.

Finally, ALJ Leppala explained to Ms. Finkelstein that because her case was "[r]emanded specifically because of the prior Judge's failure to adequately develop the record, so what I'm going to do in your case is Social Security can contract with medical experts, who will come back and take a look at your file. Hopefully, they'll – and they'll review everything really, really carefully, and then they'll issue . . . a written opinion. Once those written opinions come in, they will be proffered to Ms. Persaud, and Ms. Persaud can decide whether she wants an additional hearing." *Id.* Then, Ms. Persaud asked that the Medical Experts "be qualified in the ophthalmology [sic], like you said, but also the diabetes and orthopedic." *Id.* ALJ Leppala responded that he would send interrogatories to three experts, including an endocrinologist and orthopedic doctor. *Id.* at 823.[4]

When asked if she had any questions, Plaintiff answered, "[n]o, and I just want to clarify that I'm understanding what's being said that you'll get medical experts in the fields that represents my medical issues because of everyone's inability to understand the early neurology records." *Id.* at 825.

On November 27, 2023, Plaintiff's counsel sent a letter to ALJ Leppala informing him that

[4] ALJ Leppala, who throughout the hearing had mentioned to Ms. Persaud that he had worked at another agency with someone with the last name Persaud, asked Ms. Persaud, "if you do happen to call . . . the person who shares your last name in Houston and you find the doctor, let me know." Tr. at 824.

> Dr Brahmananda Yadlapalli moved to Tampa, FL around December 2019. My office called Dr. Yadlapalli's new office in Tampa on November 15, 2023, and they informed us that Dr. Yadlapalli's is not in possession of records from his NY office. The only records available from Dr. Yadlapalli prior 2019 were submitted and are contained in the exhibit file (Exhibits 6F, 7F and 30F)
>
> The above-mentioned claimant [,Ms. Finkelstein,] visited the office space where Dr. Yadlapalli was located in New York back in 2019 and the new tenant informed her that the files were moved to Dr. Eva Sahay. My office called Dr. Sahay's office on November 14, 2023. Dr. Sahay's staff indicated that they do not have any records prior to December 2019.
>
> Despite good faith efforts to obtain these records we were unsuccessful in our attempts.

Tr. at 1038.

On October 19, 2023, ALJ Leppala submitted interrogatories to Dr. Willie Benton Boone, an ophthalmologist, and Dr. Bradley Bradford, a pediatrician. Tr. at 1904-15, 1946-51, 1916-27, 1929-44. The interrogatories to each doctor included the same instructions: "We enclosed a Compact Disc (CD) with exhibits selected for inclusion in the record of this case and includes a list of this evidence for your reference. Please complete the enclosed interrogatories based on the evidence provided, as well as your professional knowledge. A copy of this letter and the completed interrogatories will be made a part of the record of the proceedings in this case." *Id.* at 1904, 1916. The interrogatories asked the experts to opine on Plaintiff's ability to do work-related activities on a regular and continuous basis, her ability to lift or carry items, stand, sit, and walk. *Id.* at 1904-1927. It also asked them to opinion on her use of a cane, use of her hands and feet to complete tasks, limits to postural activities such balancing, climbing stairs and ramps, visual and auditory impairments, and environmental limitations. *Id.* Finally, the interrogatories asked the experts to "specify the claimant's impairments, if any, established by the evidence. . . . [And asked d]o any

of the claimant's impairments established by the medical evidence, combined or separately, meet or equal any impairment described in the Listing of Impairments?" *Id.*

Dr. Boone's responses consisted of an interrogatory statement summarizing his opinion and his responses to the rest of the interrogatories. Tr. at 1953-64. He indicates that he "examined exhibits 1F through 50F; however, [he] concentrated on those exhibits that contained information concerning the ocular examinations." *Id.* at 1953. The rest of Dr. Boone's responses did not address Dr. Yadlapalli's notes. *See id.* at 1953-64. There is no copy of pediatrician Dr. Bradford's responses, if he responded at all, in the record. Nor is any response from Dr. Bradford mentioned in ALJ Leppala's decision beyond acknowledging the interrogatories sent to Dr. Bradford were in the record. *See id.* at 793-814.

A few weeks after sending interrogatories to Drs. Boone and Bradford, on November 6, 2023, ALJ Leppala sent the same interrogatories described above to Dr. Donald R. Carr, an orthopedic surgeon. *Id.* at 1972, 1984-92. In his responses, Dr. Carr indicated that he reviewed Dr. Yadlapalli's notes but remarked "[i]llegible written notes on multiple visits. Dr. Yadlapalu." *Id.* at 2006. The only section of Dr. Yadlapalli's notes that he described were the typed-out section summarizing a "test date" of March 29, 2019, about which Dr. Carr noted "Complaining of pain, tingling and weakness in bilateral hands. Impression: moderate bilateral carpal tunnel syndrome. No evidence cervical radiculopathy." *Id.* (citing Tr. at 754-71).

ALJ Leppala had indicated he would send interrogatories "to three experts, including an endocrinologist and orthopedic doctor." *Id.* at 823. At issue in this case is Plaintiff's disability claim based on degenerative disc disease of the cervical and lumbar spines, bilaterial carpal tunnel syndrome, and diabetes mellitus with mononeuropathy of the bilateral feet, and it therefore makes logical sense the ALJ would seek the expert opinion of an endocrinologist and orthopedic doctor.

However, the record shows that he instead sent interrogatories to an orthopedic surgeon and a pediatrician, the latter of which did not respond. *Id.* Notably, ALJ Leppala did not contact a neurologist, notwithstanding that Dr. Yadlapalli is a neurologist and his notes concerned Plaintiff's neuropathy.

It is clear that these interrogatories do not meet the requirements of Judge Azrack's remand order as they do not clarify any of Dr. Yadlapalli's illegible medical records. Instead, the responses themselves indicate that Dr. Carr could not decipher Dr. Yadlapalli's handwriting nor is there any indication that Dr. Boone could decrypt them either. *See id.* at 1953-64, 2006. Moreover, sending copies of the illegible notes to other medical experts does not render the notes legible. To attempt to resolve the crucial issue of the illegible notes, ALJ Leppala could have instead issued a subpoena requiring Dr. Yadlapalli to clarify his treatment notes. The Hearings, Appeals and Litigation Manual of the Social Security Administration ("HALLEX"), "conveys guiding principles, procedural guidance and information to [Social Security Administration] hearing level and Appeals Council staff." HALLEX § I-1-0-1; *see Schofield v. Saul*, 950 F.3d 315, 322 (5th Cir. 2020) (noting that HALLEX "provides subregulatory guidance to ALJs adjudicating claims."). The HALLEX explains that "[w]hen it is reasonably necessary for the full presentation of a case, an [ALJ] may issue a subpoena on the ALJ's own initiative or at the request of a claimant or appointed representative." HALLEX § I-2-6-78.

The ALJ's failure to subpoena Dr. Yadlapalli to clarify and explain his records relating to Plaintiff's neuropathy—potentially crucial to resolution of this case and of clear concern to Judge Azrack—represent a crucial missed opportunity by the ALJ that his other efforts at expanding and clarifying the record would be essentially incapable of resolving. The clarification and interpretation of Dr. Yadlapalli's notes as they related to Plaintiff's neuropathy treatment is a

critical task for the ALJ. This is borne out by the attention given to this very issue by Judge Azrack. There is no question in the court's view that the ALJ made some efforts to expand and clarify the record in view of the practicable unavailability of Dr. Yadlapalli's notes. But it is clear to this court that the best way to make up for this deficiency in the record and interpret Dr. Yadlapalli's notes would have been to go to the source himself: Dr. Yadlapalli.

At no point did ALJ Leppala subpoena Dr. Yadlapalli to appear to clarify his notes. The record indicates that Dr. Yadlapalli was subpoenaed twice by ALJ Crawley, but not by ALJ Leppala. Dr. Yadlapalli was first subpoenaed on November 20, 2018, when he was "required to appear and testify . . . . [And] bring with you and produce . . . the following books, correspondence, papers, records or other documents: All medical records from 4/1/16 to present an any other evidence in your possession relating to the above matter," on December 5, 2018. Tr. at 140. He was again subpoenaed on March 7, 2019, to appear and to bring the same materials as required in the previous subpoena. Tr. at 191. However, at her March 4, 2019 hearing before ALJ Crawley in New York, Plaintiff indicated that Dr. Yadlapalli did not comply with the November 20, 2018 subpoena. Tr. at 53. Here, ALJ Leppala did attempt to contact Dr. Yadlapalli's office, yet, his own decision acknowledges that "Dr. Yadlapalli's handwritten neurological treatment notes are primarily illegible." Tr. at 801. This course of action appears to the Court to be the most direct method to clarify Dr. Yadlapalli's notes. Had ALJ Leppala issued a subpoena ordering Dr. Yadlapalli to appear and clarify his notes and Dr. Yadlapalli failed to comply, ALJ Leppala could have referred enforcement of the subpoena to the Regional Chief ALJ and Office of the General Counsel as required by the agency's regulations. HALLEX § I-2-5-82.

Throughout his decision ALJ Leppala relies on Dr. Yadlapalli's illegible notes in crafting Plaintiff's RFC. For example, he states that "Dr. Yadlapalli prescribed a muscle relaxer and over

the counter pain medications for her musculoskeletal pain." Tr. at 802 (citing Ex. 6F, Tr. at 322) (Dr. Yadlapalli's hand written note dated 11/30/2015). He further cites to Dr. Yadlapalli's illegible notes when indicating that Dr. Yadlapalli, among other treating sources, "regularly observed a normal gait, generally symmetric deep tendon reflexes, no tenderness, full range of motion, and no signs of weakness or nerve root irritation." *Id.* (citing Ex. 30F, Tr. at 758-67) (Several of Dr. Yadlapalli's handwritten illegible notes).

Together, the ALJ's actions on remand do not clarify Dr. Yadlapalli's notes. The interrogatories sent out do not clarify any aspect of the illegible notes. Instead, the medical experts themselves indicated that the notes were illegible or not considered in crafting their responses. Moreover, the specialists chosen to respond to the interrogatories do not match the ones indicated at the hearing and do not line up with Plaintiff's impairments. It is not clear to the court why a pediatrician would be consulted in this case. A pediatrician, while an expert in their own field, is not the indicated expert to assess a seventy-year-old's health, and that choice is never explained in the record. Moreover, the reliance on the illegible notes in crafting Plaintiff's RFC is harmful error as it results in prejudice to Plaintiff. "Prejudice can be established by showing that additional evidence would have been produced if the ALJ had fully developed the record, and that the additional evidence might have led to a different decision." *Ripley*, 67 F.3d at 557 n.22 (citing *Kane v. Heckler*, 731 F.2d 1216, 1220 (5th Cir. 1984)). It is conceivable that the ALJ could have reached a different conclusion at step 4 had he obtained clarification as to Dr. Yadlapalli's notes. Likewise, while the ALJ's ultimate assessment of Dr. Yadlapalli's opinion may be correct, without evidence as to the content of Dr. Yadlapalli's illegible notes, the Court cannot say that the ALJ properly developed the record.

Here, because the ALJ did not properly develop the record by clarifying Dr. Yadlapalli's notes leading to prejudice against Plaintiff, the Court is unable to find that his decision is supported by substantial evidence. Accordingly, the Court finds that this case must be reversed and remanded. Mindful that its job is not to play Monday morning quarterback, the Court highlights that simply sending the record and interrogatories to medical experts is not enough to clarify Dr. Yadlapalli's neurology notes. Dr. Yadlapalli's notes are a central issue to this now long running litigation. On remand, Defendant is instructed to subpoena Dr. Yadlapalli's clarification of his notes. Alternatively, if Dr. Yadlapalli fails to comply, the court does not see any reasons the ALJ could not explore alternative methods of clarification, such as consulting a handwriting expert.

Because remand is required on this issue, the Court does not consider Plaintiff's other issue for review. *See, e.g.*, *Coyle v. Colvin*¸ No. 4:13-cv-00621, 2014 WL 12531206, at *15 (S.D. Tex. July 16, 2014) (remanding on one issue and foregoing review of other issues); *Skidis v. Comm'r of SSA*, No. 3:08-CV-2181-N(BH), 2009 U.S. Dist. LEXIS 92421, at *33 (N.D. Tex. Aug. 27, 2009), *report and recommendation adopted*, No. 3:08-CV-2181-N(BH), 2009 U.S. Dist. LEXIS 92357 (N.D. Tex. Oct. 2, 2009) (same).

Finally, the Court urges Defendant to prioritize this case on remand. Plaintiff began her journey through the "byzantine [if not Kafkaesque] labyrinth" of the Social Security Appeals regulations and process *over ten years ago*. *See Wallschlaeger v. Schweiker*, 705 F.2d 191, 194 (7th Cir. Apr. 5, 1983). " '[J]ustice delayed is justice denied,' " and the longer Plaintiff waits without finality one way or another, the longer justice is delayed. *In re United States ex re. Drummond*, 886 F.3d 448, 450 (5th Cir. Mar. 23, 2018) (quoting *Johnson v. Rogers*, 917 F.2d 1283, 1285 (10th Cir. 1990)). The court is mindful of everybody's heavy workload, including the ALJs, but it definitely encourages, to the extent possible, the prompt resolution of this long pending case.

## III. CONCLUSION

The Court **ORDERS** that the decision of the Commissioner be **REVERSED** and the case be **REMANDED** pursuant to the fourth sentence of 42 U.S.C. § 405(g).

**SIGNED** this 29th day of September, 2026.

**MIGUEL A. TORRES**
**UNITED STATES MAGISTRATE JUDGE**